Let's pick up the next case, Rufus v. McGaha. Let's see, Mr. Clark for the appellant. Good morning, Your Honor, counsel, and may it please the court, my name is Stuart Clark. I represent Kenesha Rufus, the plaintiff and appellant in the matter before the court today. Let's start with what this case is not about. This is not about losing an eviction trial, and this is not an appeal from an eviction judgment. The only matter of dispute is whether a landlord can summarily lock out a tenant without a court order when the tenancy hasn't ended yet. The Illinois Forcible Entry and Detainer Act, what I will call FEDA, guarantees due process for persons before they are evicted, regardless of whether or not that person or tenant has a valid lease, and really regardless of whether or not that person has a valid tenancy. So I'd like to discuss a few issues. Number one, I'd like to explain why the lease in question was not actually terminated. Second, I'd like to explain why the FEDA count that we alleged was a valid cause of action because the tenancy continued, even if the lease did not. Third, I'd like to explain why we stated a valid cause of action for breach of contract and under the Consumer Fraud Act. And finally, I will explain why none of those causes of action were waived and why there was no waiver in this case. First, by the terms of the lease itself, paragraph 5D of Part C of the housing addendum to the lease in this case, nonpayment of the HUD subsidy, our client was a Section 8 tenant, did not end the tenancy and specifically was not grounds to terminate the tenancy. We highlighted this on pages 8 and 9 of our opening brief, and the tenancy addendum by its own terms prevails over contrary terms in the lease. So the lease by its own terms and the addendum contemplated the potential nonpayment of the subsidy. And note that the lease and the addendum differentiated between the end of the lease and the end of the tenancy. So theoretically, if the landlord isn't sure about whether a lease or a tenancy has ended or not, there's an easy way for the landlord to protect him or herself. The landlord can go to a FEDA court and get a court order using the FEDA procedure that has been in place now in Illinois for almost 150 years. And there's another reason why the FEDA procedure exists. It's not just to protect the landlord. It's also to protect the tenant. So, for example, we cited the Aguirre case in our brief, which provides for the exhaustion of administrative remedies by a Section 8 tenant who has had her benefits terminated. So in this particular case, our client, she goes out of town to this family on November 2nd, gets a letter on November 6th saying that her benefits were terminated, but she doesn't actually see until she gets back in town on November 12th. But by the time she gets back in town, she's already been locked out of her unit. Aguirre provides a specific procedure by which a Section 8 tenant can actually go and get those benefits back, an appeal process, if it were. But our client never had the opportunity to pursue that process. And that's important because— Can I ask you a question, Counsel? Absolutely, Your Honor. The court's order, this court's order of July 15, directed the parties to address the issue of waiver in the brief. Where in your brief is that issue addressed? We addressed waiver at some length in our reply brief, Your Honor. Because waiver is an issue that the defendant was raising as an argument against us, it is our position that the defendant had the burden to raise that issue and responded to it. If you would like, Your Honor, I can address the arguments on waiver now. Well, you can address them when you feel it's appropriate, but I didn't see it in your appellant's brief when you were directed to by the court's order. We considered the order, Your Honor, and I apologize if we misinterpreted the order. But our understanding was that because waiver was an issue being raised by a defendant, that the defendant was going to raise that issue and we were going to respond to it. Because we didn't know exactly what waiver arguments the defendant was going to raise, we waited to see what they were so we could respond to them accordingly. We didn't want to dump the entire kitchen sink of waiver arguments on Your Honor. So we wanted to make sure that we were responding to the appropriate arguments as opposed to essentially doing a scattershot approach. Turning back to the – I will actually address the waiver arguments now because they are important to Your Honors. The waiver arguments, as we understand them, there were two different sets. There was the issue of waiver with regards to the lower court and there was the issue of waiver with regards to this court. From our perspective, they really are interrelated, and this is why. Let me ask you this question about the lower court. Wasn't it – isn't it true that your client wasn't there for the hearing? Well, with respect to the hearing, Your Honor, there was apparently some kind of miscommunication between our office and Attorney Westwater, who was supposed to appear on our behalf. Apparently, Attorney Westwater was under the impression that she never received any documents from our office. We actually did send those documents. So those – I don't know why those documents did not end up being received. What I can tell you, Your Honor, is that what happened was there was the initial complaint. There was a motion to dismiss filed. There we filed a response that there was a second motion to dismiss filed. The second motion to dismiss was essentially the same as the first motion to dismiss with the addition of 619.1, that number being added, and two citations to case law. Our response didn't change. Our response was the same to both motions. So our – because the arguments were the same in both motions to dismiss, so our response was the same. So from our position, we didn't waive anything because our response still stood. The arguments never changed. But even assuming for the sake of argument that there was some kind of waiver, as Your Honor is aware, a waiver is a limitation on the parties, not a – not binding on this court. And given the importance of the issues that are being raised, this – there is a public policy from both this court and every other appellate court in deciding cases on the merits. And this should not, given the importance of this case, be something that stops this court from deciding the case on the merits simply because there was apparently a communication gap between our office and Attorney Westwater or because we stood on our response to the first motion as opposed to filing what would have been the same response to what was the same motion filed again. Was there any post-trial or post-judgment motion filed in the trial court once the court dismissed your cause of action in the trial court? We did not file a motion to reconsider, Your Honor. We just filed a notice of appeal. It was our position that given the – there is a relatively low success rate for motions to reconsider, Your Honor. We also wanted to make sure that given the importance of the issues that are at stake in this case, we wanted to bring it up before Your Honors because the arguments that are being raised by the defendant are somewhat novel. The defendant is essentially arguing that the Forcible Entry and Detainer Act doesn't apply when a lease ends, which is something that is, A, goes against 150 years of Illinois law, and B, which is something that needs to be addressed by this court given the importance of that argument because if that argument were to stand, essentially every time someone goes out of town to visit family who is renting, that person can be deemed to have abandoned their unit. They come back to find themselves locked out. That can't possibly be either what the Forcible Entry and Detainer Act says and it can't possibly be what this court and every other appellate court or the Illinois Supreme Court has been saying over the past 150 years about strict compliance with the Forcible Entry and Detainer Act. I forgot. How long was she out of town? I'm sorry, Your Honor? How long was she out of town? Ms. Rufus went out of town on November 2nd. How long? She came back on November 12th. Her subsidy benefits were terminated until November 6th. When was her rent due? Her rent was – let me give you a two-fold answer to that question, Your Honor. Number one, under Midland Management v. Helgeson, the subsidy benefits are not technically considered rent, so that's the first issue. The second issue is her rent is due on the first of the month, but the overwhelming majority of that was paid by the subsidy, so she would not have found out that the subsidy wasn't paid until she got that letter. Was this the first time they didn't pay the full amount? This was the first time, correct, Your Honor. Did she get any notice from them? Was that in the record? The notice that she got – That she was only going to get – that she was only going to pay a partial amount? Correct. They terminated her. So what happened is she didn't find out until November 6th, and she didn't find out on November 6th because that's when she got the letter, and the letter stated that the benefits were terminated that day. What I'm asking is supplement. Did she know that she wasn't going to have enough to pay the full rent out of the supplement? I don't believe she did, Your Honor. I don't have a specific answer to that. I can find out if you'd like. But what I can tell you, Your Honor, is that the question of that shouldn't have made a difference to what we're stating in this case because whether Ms. Rufus had the ability to pay the rent or not doesn't mean that the landlord can summarily lock her out. The Forcible Entry and Detainer Act specifically states that if – I'm not – I just was worried about the facts. That's all I wanted was the facts. I didn't want the argument on the law. I understand, Your Honor. Turning back to the issue of waiver, the defendant raises three cases in support of her argument on waiver. Jackson v. Hooker, that's a completely different procedural posture. It's a 1401 petition. The question was do you apply a 1401 standard of law or a 1301 standard of law. That's not what we're dealing with here. Kingwood v. Gossett was a dental malpractice case. That's a question of fact. Here we're dealing with solely a question of law. Illinois Supreme Court Rule 366b-1 differentiates between questions of law and questions of fact. This is purely a question of law here. This was a motion to dismiss. Motions to dismiss are just evaluating on questions of law. And the interpretation of the Forcible Entry and Detainer Act is a question of law. And finally, McKinnon v. Yellow Cab was a discovery dispute over tax returns. Again, that's not something that is relevant here. And I'd also like to point out that Ben-Hur v. Catrice, that case applies both ways. Technically speaking, the defendant's brief didn't comply with Rule 341H. It included words in the – it included a statement of facts that it didn't need to include because the defendant is the appellee. The statement of facts included words like claims, alleged, allegedly, purported, words that have been found in People v. Madden to be inappropriately argumentative. So from that perspective, what's good for the goose is good for the gander. And like I said before, Your Honor, Rutledge v. St. Anne says that what we're trying to do here is find a resolution on the merits. So because waiver is a limitation on the parties and not binding on this court, we're asking that this court actually address the merits, particularly given how important this particular issue is. So turning back to the FEDA issue, the Forcible Entry and Detainer Act specifically states in Section 102A4 that it applies when any lessee of land or tenements or any person holding under such lessee holds possession without right after termination of the lease or tenancy. So even assuming, for the sake of argument, that the lease or tenancy was ended, the Forcible Entry and Detainer Act still applied. Now, for the defendant to argue that the plaintiff somehow abandoned the unit, the defendant would have to show that the plaintiff had no intent to return. And it's very difficult to do that, number one, when the plaintiff still had items or personal property in the unit, B, it had only been ten days she was going out of town to visit her family, and C, and this is most importantly, that's an issue of fact to be determined at trial, not something to be alleged as the basis for a motion to dismiss. So if that's something to be submitted to a jury, if that is the basis for the defendant's stated defense that, well, plaintiff abandoned the unit, she wasn't coming back, that's something that should have been raised at trial for a jury to decide. And this is where the Evans Trio of Cases is important, because the Evans Trio exclusively resolved this issue. Evans stated that, no, regardless of the circumstances of a person's presence in the unit, a fee to action is required. You can't use a criminal trespass statute. You can't just throw them out. You have to get a court order of eviction. You have to. Now, the defendant, again, tries to differentiate by saying, well, Evans, she locked herself in the bathroom, whereas here the plaintiff was actually going away to visit her family. But again, that's a very dangerous precedent. That would mean that if any of your honors is renting, your landlord can lock you out while you are visiting her family. And that's, again, a very dangerous precedent. Counselor, I'm just curious, as was Justice Welch on some of the facts here, and it's a lot of curiosity. Did your client ever get her stuff back that was left in the apartment? She didn't. She had to move to Chicago. So she had family in Chicago that was willing to take her in, but she did not actually get her stuff back. Turning to Perry, which is very briefly, which the defendant mentions, Perry, the tenant's actually left voluntarily after a threat. There was no threat here. The lockout was just done. As far as the breach of contract count is concerned, paragraph 8F of the lease contract states that the owner may only evict the tenant by court action. Clearly, that didn't happen here. And it's our position also that it is an unfair business practice and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act to lock someone out without a court order, particularly given 150 years of settled law states, you need that court order. And so for these reasons, we're asking that the judgment of the trial court be reversed, that clearly the Forcible Entry and Detainer Act states a court order was required. That didn't happen here. And the circuit court erred by holding that that was OK. So we're asking that that judgment be reversed. Thank you very much. Thank you, counsel. Argument for the appellant. May it please the court, counsel. My name is Heidi Coffey, and I'm here for Terry McGaha, the affiliate, the landlord, and the defendant below. First, I'd like to address the issue of waiver. Supreme Court Rule 341H7 requires an appellant to state all issues, arguments in their opening brief. It prohibits raising additional issues in a reply brief or an oral argument, which plaintiff just did today. Not only did he not raise his issues in his opening brief, the issue of waiver was brought before the court on my client's motion to dismiss, and this court specifically ordered the parties to address the issue. So that issue was waived, and further argument or argument in the reply brief violates Supreme Court Rule 341H7. I would ask that the court not consider the appellant's arguments on waiver because of the violation of that rule. I also ask that the principles of waiver should deny further review of this action brought by the appellant in the trial court. It is established in February of 2015 by agreement of the parties. Defendant was proceeding with the amended motion to dismiss. Plaintiff was given 21 days to respond. There was no response. The court set the motion hearing date and ordered that the attorneys will appear in person. No one appeared on behalf of the plaintiff at the motion hearing, okay? So then the order was entered. No post-trial motion was filed. Then we get here. The issue of waiver is not raised in the appellant's opening brief, and this is not a situation where appellant did respond to the amended motion to dismiss below, but now there's an additional argument they would like to raise, and so the court will allow the additional argument. There was no response at all, no opposition, no written response, no oral argument, no post-trial motion, nothing at all done to preserve review of their arguments in opposition to the motion to dismiss. The litigants should not be allowed to stand mute or remain silent in the trial court because they prefer that the appellate court hear their arguments instead of the trial court. That's a waste of the trial court's, the appellate court's, and the litigant's time and resources to go through the trial court procedure and then hope to argue the issue for the first time on appeal. The cases that I cited stand for that proposition that arguments cannot be raised for the first time on appeal. Counsel, the appellant argued that they filed a response to the first motion to dismiss, but they didn't file a response to the second motion to dismiss, but it was the same motion, the same issues. Do you agree with that or not? No, Your Honor. That issue was specifically discussed during the telephone status conference in February, and it's on the docket sheet that's part of the addendum in this case, and the parties agreed that we would proceed on the amended motion to dismiss. That's why a plaintiff was given additional 21 days to respond. They requested time to respond, and they never stated in any form that we just plan to rely on our earlier response. I mean, they could have filed the same motion, or they could have sent a letter saying we're relying on our prior response, but nothing was done. And then they were ordered to appear for the motion hearing, and they didn't appear. And then they were ordered to address the waiver argument in their brief here, and they did not do that until the reply brief, which, as I stated, is contrary to Supreme Court Rule 341H7. Would you address the issue of how this ended up in Cook County and then got transferred back to what? Wayne County. What county? St. Clair? Wayne County. Wayne County, okay. Yeah, there. Plaintiffs filed the action in Cook County. They're attorneys from Cook County, I guess. I suppose that's why, because under the statute, venue is appropriate where the dependent resides or where the property is located, which both are clearly Wayne County. And this is Section 8 housing in Wayne County? Right. Well, my client had one unit that was leased under Section 8 at that time. But so then when she left, they then filed the case in Cook County. So my client had to file a motion to transfer venue to the proper place, which is Wayne County. And since then, I mean, this is the first time anybody from Chicago has been here to, you know, to argue their case in any way. And Cook granted the motion to transfer, is that right? Yes. Cook County granted our motion to transfer venue. It took approximately six to seven months for that process to occur. And then a status conference was held and a deadline was set for defendant to plead.  So we haven't answered yet, but we feel at this point that we're asking the court to affirm the dismissal of the case because plaintiff did waive their arguments on appeal. They waived the right to argue. They didn't waive the arguments on appeal, and they didn't address the issue in their brief. Waiver, as they said, is within the discretion of the court. However, in this case, there's no issues of fairness that would require the court to overlook the issue of waiver. My client did not do anything wrong. If you look at the leases, which are part of the exhibits to the complaint, so they're part of the allegations, plaintiff is the one who violated the Section 8 program. Plaintiff is the one that caused the lease to terminate due to her violations. Defendant did not terminate the lease. He did nothing to terminate the lease. The lease was terminated by the housing authority, Wayne County Housing Authority. At the time the lease was terminated, she wasn't there. The purpose of the Forceful Entry and Detainer Act is to prevent someone from forcibly removing a tenant. In this case, her lease expired. She had no right to possession. He had paramount right to possession of the premises, and she wasn't there. What about the felon's argument about her stuff that was still there that she never got? What happened to it? Well, it's my client telling you what my client advised me. Is it in the record? No. First of all. It's not in the record. Do you know? Yes. I mean, I know what my client told me, if you want me to tell you. I'm sorry. Okay. Yeah. I mean, the things that were there for two people, $587 worth of furniture. Well, we can't go outside the record. We can't go outside the record. We don't want to go outside the record. Well, the Exhibit D is in the record of what the items were. It's not where the items are now. Okay. But when she left on November 2nd, she left $587 worth of furniture, food, cleaning supplies, towels, sheets, clothes for two people. So I don't think that necessarily establishes that she intended to return. But in any event, we're asking the court to find that she did, in fact, waive these issues in the trial court and also on appeal. So the Forcible Entry and Detainer Act does not prohibit my client from entering his own property when the lease expired in a peaceable manner. The tenant's not there. Under those circumstances, the act just doesn't apply. And that's what happened here. The lease expired, and she was gone, and he entered. And that's not prohibited. There was no forcible eviction. Exhibit C shows that she had program violations, and she was supposed to go by the Housing Authority office on October 31st, and she didn't. And so they wrote her a letter telling her she was terminated. Meanwhile, she left and left town. She wasn't anywhere around. My client argues that my client forcibly removed her against her will, and that's just not so. She was not even in the same town as the property. And the lease had expired. I mean, he has no obligation to hold the property for her in the event she might someday return. The lease expired, and she was gone, so the Forcible Entry and Detainer Act doesn't apply. He had paramount right to enter, and he did so peacefully. That does not in any way violate the Forcible Entry and Detainer Act. And I don't think this is a case where, you know, to maintain a consistent body of law, we need to overlook the issue of waiver, because I think the law is clear that the Forcible Entry and Detainer Act does not apply under these circumstances where lease expires and plaintiff is not in possession. Thank you, Your Honor. Rebuttal argument. Your Honors, not filing a response to a motion, even assuming that's what happened here, that our response to the first motion didn't apply to the second, not filing a response to a motion doesn't mean that a court has a rubber stamp to grant that motion. A court still has to look at the motion itself, evaluate the law from that motion, and evaluate that motion on the merits. And what we see here is that the court below didn't do that. The court below didn't evaluate the law on the merits, because if the court below had, the court below would have seen that the Forcible Entry and Detainer Act simply doesn't allow a landlord to lock out a tenant. When the tenant still has stuff there, when the tenant is still living there, and when the tenant has an intent to return there. Would a trial have shown that our client had abandoned the unit? Possibly. But we never got that chance. And at the pleading stage, which is where we are, all facts and inferences are concluded in the plaintiff's favor, even on a motion to dismiss that isn't responded to, in the plaintiff's favor. And the complaint in this case clearly stated that our client was still living there, that our client still had her stuff there, that our client had an intent to return there. And she clearly did. She came back. She came back. That in and of itself is evidence of her intent to return. And just because a lease terminated doesn't mean that FEDA doesn't apply. The tenancy was still going on. And FEDA, by its own terms, contemplates a situation where the lease has terminated and where the tenancy has terminated and someone is still there. Furniture, food, and clothes, those do indicate that someone is still living there. Defendant's argument that they maybe don't, again, it's a question at trial. But for this particular issue, where all facts are construed in the plaintiff's favor, that still has to be done on a motion to dismiss, even where no response is filed. And possession of a unit does not require physical presence all the time. The Forcible Entry Detainer Act doesn't just say you can't barge into a unit, guns blazing. It says you have to get a court order. It says that very specifically. There was no court order here to change the laws. And if the landlord wasn't sure, he should have gotten a court order. That's what FEDA says. That's what FEDA requires. And so to read in a requirement that where a Section 8 tenant violates the terms of Section 8 and, therefore, no FEDA order is necessary, you'd be creating a very dangerous precedent by saying, well, the rich get one standard and the poor get another. That is a very dangerous precedent for Section 8 tenants to not get the protection of the Forcible Entry Detainer Act because they violated their own lease. That's not what FEDA says. FEDA is very clear. You need a court order. That's not what happened here. And because that's not what happened here and because the court below didn't take that into account, we're asking that the decision of the court below be reversed. And thank you very much. Thank you, counsel. We'll take this case under advisement. We're going to take a short recess before we call the case set. Court will recess.